# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

KINETEC USA, INC.,

        Plaintiff,

v.

                              Case No.

MEDENVISION BV and MEDENVISION
USA, LLC,

        Defendants.

## COMPLAINT

NOW COMES the Plaintiff, Kinetec USA, Inc., by and through its attorneys, Amundsen Davis, LLC, and as and for its Complaint against the Defendants, MedEnvision BV and MedEnvision USA, LLC, alleges and states to the Court as follows:

## **PARTIES**

1.      Plaintiff Kinetec USA, Inc. ("Kinetec") is a corporation organized under the laws of the State of Wisconsin, with its principal office located at N174 W21475 Alcan Drive, Jackson, WI 53037-8611. Kinetec is engaged in the business of selling medical devices and other health care-related equipment and services, including without limitation, serving as a provider of orthopedic rehabilitation devices. Accordingly, for purposes of diversity jurisdiction, Kinetec is a citizen of the State of Wisconsin.

2.      Defendant MedEnvision BV ("MedEnvision BV") is Belgium-based medical technology company, with its principal office located at Boskant 16, 2260 Westerlo, Belgium. MedEnvision BV develops, manufactures, and sells medical devices for use in orthopedic

surgery, often with the aim and function of optimizing operating room workflows. For purposes of diversity jurisdiction, MedEnvision BV would be deemed a foreign citizen and a citizen of Belgium.

3.      Defendant MedEnvision USA, LLC ("MedEnvision USA") is an American subsidiary of the aforementioned MedEnvision BV, the Belgium-based medical technology company, with its principal office located at 2976 East State Street, Suite 120 #2, Eagle, Idaho 83616. MedEnvision is registered and organized in the State of Delaware. On information and belief, MedEnvision USA has been created so that it can begin to sell and distribute medical devices and other health care-related equipment and services developed and manufactured by MedEnvision BV, taking over the role and function of dealers like Kinetec, who have been the US-based sales and distribution arm for MedEnvision BV's product line. Upon information and belief, MedEnvision USA is a citizen of the State of Idaho and/or the State of Delaware.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the matter under 28 U.S.C. § 1332, because the Plaintiff is a citizen of Wisconsin and the Defendants are a foreign citizen and citizen of Idaho or Delaware, respectively, and because the amount in controversy in this matter far exceeds $75,000. Therefore, there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy (exclusive of attorneys' fees and costs) exceeds $75,000, as is required to establish federal diversity jurisdiction under 28 U.S.C. § 1332.

5.      This Court has personal jurisdiction over Defendants because they regularly and voluntarily do business in the State of Wisconsin.

a.      Upon information and belief, MedEnvision BV products are available through online retailers located in the U.S., more specifically IMedicSales

2

and DePuy Synthes. DePuy Synthes has multiple sales representatives located in Wisconsin, including one sales representative located in Eau Claire, Wisconsin and two sales representatives located in Green Bay, Wisconsin.

b. Upon information and belief, Defendants, working in concert, have attempted to solicit one of Plaintiff's hospital group customers located in LaCrosse, Wisconsin.

c. Upon information and belief, Defendants, working in concert, have sold products and/or provided quotes for products to hospital groups and medical providers located in Oshkosh, Wisconsin.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(3), because Defendants are subject to personal jurisdiction before this Court and, thus, are residents of Wisconsin for purposes of § 1391(b)(1) and (b)(3), and a substantial part of the events giving rise to the claim occurred in this district for purposes of § 1391(b)(2).

7. Defendants have engaged in substantial and not isolated activities within the State of Wisconsin, including regularly conducting business in this judicial district.

8. Defendants have purposefully directed activities at the State of Wisconsin and this judicial district.

## FACTUAL BACKGROUND

9. Kinetec hereby restates and incorporates the allegations contained in Paragraphs 1 through 8 as though fully set forth herein.

10. Kinetec was formed and organized in 2014, and it is the Wisconsin-based subsidiary of Kinetec SAS.

3

11. Kinetec SAS has existed for over 40 years and was originally founded in Charleville-Mezieres, France by a physiotherapist M. Jean-Claude Pecheux. Monsieur Pecheux created the company because he wanted to sell orthopedic traction frames. Ultimately, he invented other medical devices and products to assist orthopedic surgeons in performing their surgeries.

12. Kinetec manufactures and sells its own product line focused on orthopedic rehabilitation, which includes products launched under the brands known as Kinetec Kinevia, Kinetec Kooler and Manosplint.®

13. Kinetec also distributes and sells orthopedic medical device, surgery aids and rehabilitation products made by other companies, including MedEnvision BV.

14. In 2015 or 2016, Kinetec's CEO, Bob Donaldson, attended the AAOS Congress in the United States where he first met executives from MedEnvision BV. After this initial meeting, executives from both companies met in Belgium. At the time of these meetings, MedEnvision BV had made some sales in Belgium, but they had no presence in the U.S. market and insufficient capital to bring product to market.

15. Because Kinetec believed in the MedEnvision BV product line, Kinetec made a commitment to purchase several hundred-thousand dollars' worth of MedEnvision product, thus making Kinetec the first customer of substance for MedEnvision BV.

16. Kinetec proceeded to invest in launching the MedEnvision BV product into the U.S. market over the next 6-8 month period.

17. Starting in February 2017, Kinetec became the first US-based distributor for MedEnvision BV. MedEnvision BV was seeking a partner to help introduce its products into the

4

American marketplace. Kinetec was already established as a premier manufacturer and distributor of orthopedic medical devices.

18. From the beginning of their business relationship, Kinetec had the exclusive right to sell MedEnvision BV's products known as The Gripper™ System (a positioning device that assists the surgeon by holding a retractor during surgery), and The EsySuit™ Range (a comprehensive, full body draping system that includes an incision window and foil for easy surgical access while maintaining a sterile environment) (together, the "MedEnvision Products").

19. Kinetec has always provided top-notch back office support for the product lines it offers. Part of Kinetec's well-established reputation was for on-time, prompt and seamless delivery of products. This service was exactly what Kinetec offered to MedEnvision BV.

20. Prior to July 1, 2019, MedEnvision BV and Kinetec were parties to an exclusive distribution agreement which granted Kinetec the exclusive right to sell and distribute MedEnvision Products to orthopedic surgeons, hospitals, and other health care providers in a number of places, including throughout the State of Wisconsin.

21. Effective on July 1, 2019, MedEnvision BV and Kinetec entered into a Term Sheet agreement (the "Agreement") which granted Kinetec an exclusive right to distribute the MedEnvision Products, along with related accessories, in 23 U.S. States[1] for a time period ending on December 31, 2020. A true and correct copy of the Agreement which was used to memorialize the principal terms of the parties' agreement is attached hereto as Exhibit 1 and incorporated herein.

---

[1] The states in which MedEnvision BV granted Kinetec an exclusive right to distribute the specified products included Wisconsin, alongside Florida, New York, North Carolina, Alabama, Illinois, South Carolina, Pennsylvania, New Jersey, Rhode Island, Massachusetts, Georgia, Maryland, Michigan, Ohio, Indiana, West Virginia, Virginia, Vermont, Connecticut, Delaware, Maine and New Hampshire.

5

22. After the exclusivity period ended on December 31, 2020, the Agreement provided that Kinetec would continue to have a non-exclusive right to distribute MedEnvision BV's products in the 23 states specified in the Agreement, and the Agreement required MedEnvision BV, alongside its affiliates and its other distributors and agents to refrain from contacting any Active Customers of Kinetec within the 23 state territory.

23. Kinetec and its representatives devoted countless hours, effort and a substantial amount of money and resources in cultivating and maintaining a very high level of goodwill for the MedEnvision Products.

24. Over time, Kinetec's sales efforts for MedEnvision BV were so successful that it needed to acquire more space.

25. Kinetec undertook the expenses associated with finding a new, larger building in Jackson, Wisconsin and then conducting significant tenant improvements to the space. The main reason Kinetec embarked on this process is that it was relying upon MedEnvision BV's continued business relationship.

26. On July 28, 2023, Kinetec signed a lease for its new building, moving from an office and warehouse building of 6,428 SF to a new office and warehouse building of 14,972 SF.

27. Moving to a new building alone meant Kinetec undertook increased expenses for rent, CAM payments, property taxes, insurance utilities and cleaning costs. For example, in 2023 alone, Kinetec's building expenses went from approximately $80,250.00 a year to $198,320.00 a year.

28. On January 31, 2024, Kinetec sent a customer announcement to all of its customers indicating they were expanding their office and warehouse operations and would be

6

moving on February 19, 2024. MedEnvision was well aware of Kinetec's building expansion and relocation long before the customer announcement was sent.

29. At all times material hereto, Kinetec, in good faith, substantially complied with essential and reasonable requirements imposed upon it by MedEnvision BV.

30. Kinetec never received notices from MedEnvision BV that there were concerns or Kinetec was in default of the Agreement. Even in February 2024, MedEnvision BV's president was sending communications to Mr. Donaldson of Kinetec acknowledging the partnership and cooperation between the companies.

31. Kinetec maintained a well-trained in-house staff who dedicated a substantial amount of their time toward promoting the MedEnvision Products. In addition, Kinetec established and grew an independently contracted distribution network to establish, grow and expand the accounts that would buy MedEnvision Products.

32. MedEnvision BV and Kinetec maintained a continuing financial interest between them from the original commencement of their business relationship until today.

33. Kinetec invested significant time and resources in maintaining and developing its relationship with MedEnvision BV, and in promoting and selling the MedEnvision Products.

34. Throughout their business relationship, Kinetec and MedEnvision BV engaged in significant coordination and cooperation of marketing campaigns aimed toward expanding the saturation of MedEnvision Products in the U.S. marketplace as this was a beneficial and common goal for both businesses.

35. During the course of this business relationship, a substantial portion of Kinetec's revenue was generated by the sale of the MedEnvision Products. From 2022 to 2025, the

7

percentage of Kinetec's overall U.S. based sales encompassing the MedEnvision Products ranged from 69.5%-75.7%.

36. Kinetec was incredibly successful in growing MedEnvision BV's sales. Year over year, Kinetec grew revenue dollars of MedEnvision Products by over $1 million each year, while maintaining profitability.

37. On or around April 15, 2024, MedEnvision BV sent an email to Mr. Donaldson indicating that they wanted to terminate the U.S. distribution agreement, move their long-term strategy with Kinetec in the U.S. to an "agency agreement" and propose a non-exclusive long term distribution agreement with Kinetec in the Middle-East.

38. Kinetec simply couldn't agree to this proposal as it would substantially and negatively impact its financial performance. Not only did MedEnvision BV significantly reduce the payments to Kinetec, but it wanted to transfer over all Active Customers, contrary to the Agreement, while simultaneously requiring Kinetec to warehouse products for its customers and MedEnvision USA's customers.

39. On April 23, 2024, Kinetec proposed an alternative proposal to maintain the parties' existing relationship, but provide additional financial contributions to MedEnvision BV.

40. The Agreement provided that either party had the right to terminate the agreement by providing written notice of the decision to terminate, and that any such termination would become effective after the expiration of a notice period of 24 months.

41. In a letter dated April 25, 2024 (the "Notice"), MedEnvision BV purported to give Kinetec notice that MedEnvision BV had chosen to terminate the Agreement, noting that the termination would become effective at the end of a 24-month notice period which would

8

conclude on April 30, 2026. A true and correct copy of the Notice is attached hereto as Exhibit 2 and incorporated herein.

42. The purported Notice given to Kinetec on April 25, 2024 violated the Wisconsin Fair Dealership Law codified in Wis. Stat. ch. 135 ("WFDL"), which prohibits anyone who has entered into a dealership agreement with a dealer from terminating, canceling, failing to renew or substantially changing the competitive circumstances of a dealership agreement without good cause.

43. MedEnvision BV's Notice threatens to substantially harm Kinetec's competitive circumstances and will cause extensive damages, including but not limited to, lost profits and lost business opportunities.

44. MedEnvision BV lacked the requisite good cause required before terminating, canceling, failing to renew or substantially changing the competitive circumstances of its dealership agreement with Kinetec. As a result of MedEnvision BV's lack of good cause, the purported Notice of termination given to Kinetec on April 25, 2024 is unlawful and ineffectual.

45. From April 2024 to June 24, 2025, the parties discussed various proposals for transition and continuation of their business relationship and communications to customers who had purchased the MedEnvision Products. Even as late as June 24, 2025, MedEnvision BV proposed a continuing business relationship with Kinetec where Kinetec would be paid a commission-based compensation.

46. Kinetec rejected the June 24, 2025 proposal. Only on September 14, 2025, did MedEnvision BV's CEO, Dries Goyens, sent an email finally confirming the business relationship would end on April 30, 2026. M. Goyens demanded that Kinetec forward its Active Customer contacts, contrary to the Agreement, and indicated MedEnvision BV intended on

9

communicating with these Active Customers. MedEnvision BV also refused to purchase or take back its inventory.

47. Kinetec faces a very real and imminent threat of losing the substantial goodwill and reputation it has built in the industry selling the MedEnvision Products to its Active Customers.

48. In addition to these threats, MedEnvision has engaged in a pattern of conduct that itself constitutes substantial changes in Kinetec's competitive circumstances without good cause.

49. MedEnvision BV has wrongfully interfered with Kinetec's operations and its business relationship with its Active Customers through its conduct after purportedly giving the Notice by engaging in a series of actions that breach the Agreement and violate the WFDL in the following non-exhaustive respects:

- **Interference with Order Processing and Supply**: MedEnvision delayed PO #2226 for approximately one month (December 12, 2025-January 7, 2026) and PO #2237 for nearly two weeks while demanding inventory justifications and imposing non-contractual conditions (January 14-27, 2026).

- **Imposition of a Non-Contractual Price Increase**: Despite confirming no 2026 price increase in September 2025, MedEnvision, while violating its supply obligations as noted above, conditioned PO #2237 on a 3% price increase.

- **Interference with Customers and Distributors**: MedEnvision BV, including through MedEnvision USA and its representatives, has engaged in direct communications with Kinetec-affiliated distributors and hospital customers without Kinetec's prior written authorization.

- **Premature Transition and Account-Transfer Conduct**: MedEnvision has proposed and circulated transition

materials to Kinetec, including an April 15, 2024 proposed Customer Transition Letter contemplating a July 1, 2024 direct-billing structure, internal transfer files mapping Kinetec-developed customer relationships, and a draft Termination Agreement – without Kinetec's consent. Although these materials were not transmitted to customers, they reflect MedEnvision's unilateral assumption of control over Kinetec-developed relationships and operational planning for an early transfer of accounts.

50.     Pursuant to the Agreement, Kinetec had the "exclusive right to distribute Products" within 23 states. Ex. 1 at 2. After the exclusivity period, Defendants were obligated to "refrain from contacting Active Customers of Kinetec" within the territory set forth in the 2019 Distribution Agreement. *Id*. at 3.

51.     "Active Customers" means "customers to who[m] Kinetec effectively has sold products over the last six months." *Id*.

52.     The Agreement makes clear that the Parties will refrain from contacting Active Customers or "Prospects" of the other Party. *Id*.

53.     Upon information and belief, Defendants have contacted Kinetec's Active Customers contrary to the provisions in the Agreement. These contacts have been attempts to sell MedEnvision Products or to conduct annual training on MedEnvision Products. All of these contacts are expressly forbidden under the Agreement and are a continuing breach of the WFDL.

54.     In addition to contacting Active Customers, MedEnvision has also contacted Kinetec's independently contracted distributor network.

55.     On February 4, 2026, Kinetec, through its counsel, provided notice to Defendants that their purported Notice and actions taken after the Notice were violations of the WFDL (the

11

"Cease & Desist Letter"). A true and correct copy of the Cease & Desist Letter is attached hereto as Exhibit 3.

56. On February 20, 2026, MedEnvision BV provided a response to the Cease & Desist Letter (the "Response Letter"), insisting that its Notice did not need to comply with the WFDL, that the Notice was effective to terminate the Agreement and that Defendants had every intention on proceeding with termination. A true and correct copy of the Response Letter is attached hereto as Exhibit 4.

57. Kinetec has complied with the terms of the Agreement and has not contacted or communicated with MedEnvision's customers.

58. Because of these violations of the WFDL, *see* Wis. Stat. § 135.01, et seq., Kinetec is entitled to recover the damages it has sustained because of Defendants', including without limitation an award of Kinetec's reasonable actual attorney's fees incurred in bringing this action, *see* Wis. Stat. § 135.06, Kinetec is entitled injunctive relief against the unlawful termination, cancellation, nonrenewal or substantial change of its competitive circumstances, *see* Wis. Stat. § 135.06, and Kinetec is entitled to a temporary injunction to prevent any loss, harm, damage or injury to Kinetec during any point in time prior to the final resolution of the issues presented in this case. *See* Wis. Stat. § 135.065.

## COUNT I
### Violation of the Wisconsin Fair Dealership Law

59. Kinetec hereby restates and incorporates the allegations contained in Paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60. It is a violation of the WFDL for a grantor to terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause.

12

61. Kinetec is a dealer within the meaning of Wis. Stat. § 135.02(2) and (3) because the Agreement granted Kinetec the right to sell or distribute goods and services, and to use the brand and commercial symbols associated in the marketplace with Defendants, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

62. As a result of the business relationship between the parties, MedEnvision BV is a "Grantor" as defined by Wis. Stat. § 135.02(5).

63. As a result of the business relationship between the parties and the Agreement, a community of interest between Kinetec and MedEnvision BV existed at all relevant and material times hereto pursuant to Wis. Stat.§ 135.02.

64. Moreover, the WFDL expressly provides that it shall be "liberally construed and applied to promote its underlying remedial purposes and policies." Wis. Stat. . § 135.025(1).

65. The WFDL further expressly provides that "[t]he effect" of the WFDL "may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only." Wis. Stat. § 135.025(3).

66. The WFDL expressly prohibits any grantor from terminating, canceling, failing to renew or substantially changing the competitive circumstances of a dealership agreement without good cause." Wis. Stat. § 135.03.

67. The WFDL defines "good cause" as a "[f]ailure by a dealer to comply substantially with essential and reasonable requirements imposed upon the dealer by the grantor or sought to be imposed by the grantor, which requirements are not discriminatory as compared with the requirements imposed on other similarly-situated dealers either by their

13

terms or in the manner of their enforcement." Wis. Stat. § 135.02(4). "The burden of proving good cause is on the grantor." Wis. Stat. § 135.03.

68. MedEnvision BV knew or should have known that the WFDL requires "good cause" for terminating the business relationship between MedEnvision BV and Kinetec.

69. MedEnvision BV did not have "good cause" for the termination of the business relationship with Kinetec.

70. The WFDL also requires a grantor – whenever the grantor has "good cause" – to "provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances." Wis. Stat. § 135.04.

71. The WFDL provides that "[t]he notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency." Wis. Stat § 135.04.

72. Kinetec has complied with the essential and reasonable requirements imposed by any and all agreements with MedEnvision BV, and with any terms, if any, attendant to any relationship between Kinetec and MedEnvision BV, and so any claim that Kinetec has been in any way deficient cannot have any arguable merit.

73. The conduct of MedEnvision BV and its agents and affiliates demonstrate that MedEnvision BV intends to terminate and/or non-renew its relationship with Kinetec without good cause, in violation of the WFDL.

74. Additionally, the threat made by MedEnvision BV and its agents and affiliates about terminating or non-renewing its agreement with Kinetec represents a substantial change of Kinetec's competitive circumstances.

14

75. In addition, MedEnvision's continuing actions in reaching out to Kinetec's Active Customers, delaying shipments and imposing price increases in violation of the Agreement are continuing actions that substantially change Kinetec's competitive circumstances and are a continuing breach of the WFDL.

76. MedEnvision BV failed to provide required reasons or an option to rectify any claimed deficiency prior to termination of its business relationship with Kinetec.

77. For these reasons, MedEnvision BV's conduct and actions violate the WFDL.

78. MedEnvision's actions violating the WFDL have caused and will cause Kinetec to suffer damages, including but not limited to lost profits, lost goodwill and reputation, and lost business opportunities.

79. Given the foregoing, Kinetec is entitled to recover in this action for any damages sustained by Kinetec as a consequence of the foregoing violations of the WFDL, including without limitation the actual costs of bringing the action, including Kinetec's reasonable actual attorneys' fees, and Kinetec may also be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances, and to preserve and maintain its continuing contractual relationship with its Active Customers. *See* Wis. Stat. § 135.06.

80. Pursuant to the WFDL, Kinetec is entitled to recover up to 10 years of lost profits.

**COUNT II**
**Breach of Contract**

81. Kinetec hereby restates and incorporates the allegations contained in Paragraphs 1 through 80 of this Complaint as though fully set forth herein.

82. The Agreement is a valid and enforceable contract between Kinetec and MedEnvision BV.

15

83. Kinetec fulfilled all of its obligations under the Agreement.

84. Defendants' conduct in reaching out to, soliciting and contacting Kinetec's Active Customers is a breach of the Agreement.

85. Defendants' conduct has directly and proximately caused Kinetec to suffer damages in an amount to be determined at trial.

## COUNT III
### Tortious Interference with Kinetec's Business Relationship with Active Customers and Independently Contracted Distributors

86. Kinetec hereby restates and incorporates the allegations contained in Paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87. Kinetec holds contractual relationships with all of its Active Customers for their purchase of health care-related products, including products made by MedEnvision BV.

88. Under the express terms of the Agreement, Kinetec's Active Customers are its exclusive contractual relationships and are not transferable or property of Defendants. Furthermore, Defendants are not allowed to contact any of Kinetec's Active Customers.

89. Defendants, working in concert, have directly contacted several of Kinetec's Active Customers on more than one occasion. These communications have included, without limitation, contacts to the Active Customers soliciting them to do business directly with Defendants, contacts with Active Customers about new products that Defendants were releasing to the market that they could purchase from Defendants and training on Defendants' products.

90. At the same time, MedEnvision has also reached out to directly and contacted Kinetec's independently contracted distributors to interfere with their existing relationship with Kinetec and to encourage them to sell MedEnvision's products on a going forward basis.

16

91. These contacts with Kinetec's Active Customers and independently contracted distributors were intentionally conducted and were not accidental communications.

92. Defendants' actions were taken after they improperly issued the Notice and were done with the primary purpose of diverting the Active Customers and independently contracted distributors from Kinetec to Defendants, Defendants knew they were interfering with theses contractual relationships of Kinetec, and knew that their contacts would be substantially certain to cause interference with Kinetec's established contractual relationships.

93. Defendants' actions have caused confusion with Kinetec's Active Customers and have caused Kinetec to spend time and resources to clarify with its customers that they are still able to sell Defendants' products on this interim basis.

94. Defendants' actions were taken with an improper motive and ill will, thus Defendants were not justified in contacting Kinetec's Active Customers or independently contracted distributors.

95. As a result of Defendants' actions, Kinetec has been damaged in an amount to be determined at trial.

## COUNT IV
### Declaratory Judgment

96. Kinetec hereby restates and incorporates the allegations contained in paragraphs 1 through 95 of this Complaint, inclusive, as though fully set forth herein.

97. Under 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of the parties under the WFDL, and under other applicable provision in law or equity. Defendants maintain that MedEnvision BV has a right to terminate its Agreement with Kinetec. *See* Exhibit 2.

98. Kinetec asserts that MedEnvision BV cannot terminate the Agreement because MedEnvision BV lacks the requisite good cause required before terminating, canceling, failing to renew or substantially changing the competitive circumstances of a dealership agreement. Kinetec provided this position to MedEnvision by sending the Cease & Desist Letter. *See* Exhibit 3.

99. Defendants deny that they have breached the WFDL and maintain that they are allowed to proceed with terminating the Agreement. *See* Exhibit 4.

100. A genuine, actual, and justiciable controversy exists between Kinetec, on the one hand, and Defendants, on the other hand, regarding whether MedEnvision BV has the right to terminate the Agreement; and regarding whether MedEnvision BV must first establish the existence of good cause, and then abide by the requirement to "provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances," per Wis. Stat. § 135.04, before terminating the Agreement.

101. A genuine, actual, and justiciable controversy also exists between Kinetec, on the one hand, and Defendants, on the other hand, regarding whether other contractual provisions in the agreements between Kinetec and MedEnvision BV are legally enforceable or whether they are void and ineffectual because they cannot be reconciled with the WFDL. For just one non-exhaustive example, Defendants evidently claim that a provision labeled "Governing Law" in the Agreement establishes that the Agreement shall be governed by the Law of Belgium and shall provide for the exclusive jurisdiction of the commercial court ("ondernemingsrechtbank") of Leuven, Belgium. For its part, Kinetec maintains that the provision labeled "Governing Law" in the Agreement is a nullity and unenforceable because

by law any such provision "must yield to" the WFDL. *See, e.g.*, *Bush v . National School Studios, Inc.*, 131 Wis. 2d 435, 443, 389 N.W.2d 49 (Ct. App. 1986).

102. Given the foregoing, Kinetec is entitled to judgment declaring the respective rights and interests of the parties to this action.

**COUNT V**
**<u>Injunctive Relief</u>**

103. Kinetec hereby restates and incorporates the allegations contained in paragraphs 1 through 102 of this Complaint, inclusive, as though fully set forth herein.

104. In the Notice, MedEnvision BV attempted to terminate the Agreement effective on April 30, 2026. Thereafter, MedEnvision BV went through seventeen (17) months of negotiations with Kinetec on restructuring a long-term business relationship, which it then declared over and fully terminated on September 14, 2025.

105. Since September 2025, MedEnvision has engaged in a systemic pattern of conduct by reaching out directly to Kinetec's Active Customers in violation of the Agreement, delaying the processing of shipments and imposing price increases in violation of the Agreement- all of which represent a substantial change in Kinetec's competitive circumstances and a violation of the WFDL.

106. If MedEnvision BV is permitted to proceed with its plan to treat the Agreement as terminated effective on April 30, 2026, then Kinetec will suffer the irreparable harm of losing its status as a dealer representing MedEnvision BV's products, and so forfeiting the intangible good will which Kinetec has built up during its time serving as a MedEnvision dealer.

107. If MedEnvision BV is permitted to proceed with its plan to treat the Agreement as terminated effective on April 30, 2026, then the harm suffered by Kinetec will be a harm for which there is no adequate remedy at law, given the difficulties inherent in proving the

19

existence of a loss of prospective business which oftentimes only becomes evident after a sales effort has occurred.

108. In addition, as shown above, Kinetec has established that it is very likely to succeed ultimately on the merits of its claims about violation of the WFDL.

109. In light of the foregoing, Kinetec is entitled to injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances. *See* Wis. Stat. § 135.06.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, Kinetec USA, Inc., demands judgment as follows:

A.   For an award of any and all compensatory damages sustained by Kinetec USA, Inc., as a consequence of each and every violation of the Wisconsin Fair Dealership Law which has occurred;

B.   For an award of any and all actual costs of bringing the action incurred by Kinetec USA, Inc., including reasonable actual attorneys' fees;

C.   For judgment declaring the parties' rights, entitlement and interests on any justiciable controversy which exists between them with respect to their contractual rights and duties and with respect to their rights and duties under the Wisconsin Fair Dealership Law;

D.   For any and all injunctive relief to which Kinetec USA, Inc., is entitled against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances.  *See* Wis. Stat. § 135.06.

E.   For the costs and disbursements of this action; and

F.   For any other or further relief that this court may deem proper, just, or equitable.

**PLAINTIFF HEREBY DEMANDS THAT THIS MATTER BE TRIED BEFORE A JURY OF TWELVE PERSONS**

Dated this 18th day of March, 2026.                AMUNDSEN DAVIS, LLC

                                        By*:*   /s Sherry D. Coley
                                                Sherry D. Coley
                                                State Bar No. 1038243
                                                Jason R. Just
                                                State Bar No. 1104647

                                                Attorneys for Plaintiff,
                                                *Kinetec USA, Inc.*

P.O. Address:
318 S. Washington Street, Suite 300
Green Bay, WI 54301
920.435.9378

Direct Contact Information:
Sherry D. Coley              920.431.2239 direct dial
                             920.335.9335 direct fax
                             scoley@amundsendavislaw.com

Jason R. Just                920.431.2226 direct dial
                             920.431.2226 direct fax
                             jjust@amundsendavislaw.com