# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KINETEC USA, INC.,**

         **Plaintiff,**

      **v.**                **Case No. 26-CV-442**

**MEDENVISION BV, et al.,**

         **Defendants.**

## DECISION AND ORDER

### 1. Background

Kinetec USA, Inc., is a Wisconsin corporation based in Jackson, Wisconsin. (ECF No. 1, ¶ 1.) While it is a Wisconsin citizen for diversity purposes, it is a wholly owned subsidiary of Medfac Group, a Belgian company. (ECF Nos. 7; 17, ¶ 4.)

In 2017, Kinetec became a distributor for MedEnvision BV, a Belgian medical technology company based in Belgium. (ECF Nos. 1, ¶ 2; 29-1). The agreement was for an indefinite term but allowed for termination by either party with 24 months' notice. (ECF No. 1-1 at 4.)

In April 2024, MedEnvision informed Kinetec that it intended to terminate their agreement effective April 30, 2026. (ECF No. 1, ¶¶ 37, 41.) The parties engaged in some discussions about continuing their business relationship (ECF No. 1, ¶ 45),

but in September 2025, MedEnvision rejected any prospect of the parties continuing their relationship past April 2026. (ECF No. 1, ¶ 46.)

In March 2026, Kinetec filed suit in this court alleging violations of the Wisconsin Fair Dealership Law (WFDL), Wis. Stat. ch. 135, and common law against MedEnvision BV (a Belgian citizen for diversity purposes) and its United States subsidiary MedEnvision USA, LLC (referred to here collectively as MedEnvision). MedEnvision USA is an LLC organized under the laws of Delaware, but for diversity purposes it is a citizen of Belgium because its sole member is MedEnvision BV. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007).

Accompanying Kinetec's complaint was a motion for a preliminary injunction. (ECF No. 2.) Although the court issued summonses, Kinetec asked the defendants to waive service, which they did. (ECF Nos. 8, 9.) As a result, the defendants' deadline for appearing and answering the complaint was extended until well-after the April 30, 2026, termination of the distribution agreement. *See* Fed. R. Civ. P. 12(a)(1)(A)(ii).

With the termination of the distribution agreement fast approaching and MedEnvision having not yet appeared in this action, Kinetec asked the court to issue a temporary restraining order *ex parte*. (ECF No. 11.) That prompted MedEnvision to appear in this action. On April 27, 2026, MedEnvision opposed the motion for a temporary restraining order (ECF No. 20) and moved to dismiss the complaint (ECF No. 15). It argues, in part, that pursuant to their agreement, Kinetec must bring its suit in Belgium, and therefore it seeks dismissal on *forum non conveniens* grounds.

On April 30, 2026, the court granted a temporary restraining order to maintain the status quo while the court considered Kinetec's pending motion for a preliminary injunction and MedEnvision's motion to dismiss. Late on May 4, 2026, Kinetec responded to MedEnvision's motion to dismiss (ECF No. 31) and replied in support of its motion for a preliminary injunction (ECF No. 28). The court held a hearing on those motions on May 5, 2026.

## 2. The Wisconsin Fair Dealership Law

In the 1970s, the OPEC oil embargo disrupted gas supplies in the United States and led distributors to make changes that drove many Wisconsin gas stations out of business. Jeffrey A. Mandell & Isaac S. Brodkey, Wisconsin Fair Dealership Law Turns 50: Developments Lawyers Should Know, Wis. Law., March 2024, available at https://www.wisbar.org/NewsPublications/WisconsinLawyer/Pages/Article.aspx?Volume=97&Issue=3&ArticleID=30277. Concerned that distributors were exploiting their superior bargaining position to the detriment of Wisconsin dealers, the Wisconsin legislature enacted the WFDL. The legislature's codified purpose in enacting the law was to:

> (a) To promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis;
>
> (b) To protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships;
>
> (c) To provide dealers with rights and remedies in addition to those existing by contract or common law;

(d) To govern all dealerships, including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States.

Wis. Stat. § 135.025(2).

Understanding the WFDL must start with understanding its nomenclature. At the heart of the law is the legislature's definition of "dealership." *See* Wis. Stat. § 135.02(3). Whether a dealership exists often turns on whether there is a "community of interest," which is defined as "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services." Wis. Stat. § 135.02(1). The one who is the grantee of a dealership is a "dealer," and the other side of that relationship is referred to as the "grantor." Wis. Stat. § 135.02(2) and (5).

The WFDL is intentionally expansive and significantly alters what many may regard as the basic rights of businesses to decide for themselves the terms of their relationships. Under no circumstances can the parties agree to vary or evade the strictures of the WFDL, and any attempt to do so is automatically void. Wis. Stat. § 135.025(3). Significantly, a grantor cannot "terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause." Wis. Stat. § 135.03. Aside from bad faith by the dealer in carrying out the terms of the dealership, good cause is limited to

[f]ailure by a dealer to comply substantially with essential and reasonable requirements imposed upon the dealer by the grantor, or sought to be imposed by the grantor, which requirements are not discriminatory as compared with requirements imposed on other

similarly situated dealers either by their terms or in the manner of their enforcement.

Wis. Stat. § 135.02(4). The grantor has the burden of proving good cause. Wis. Stat. § 135.03.

The result of this provision is that, regarding a dealer "situated in" Wisconsin, *see* Wis. Stat. § 135.02(2), every dealership agreement is effectively for an indefinite term. Parties cannot simply agree that their relationship will end after a fixed term. Although many other states have laws regulating the dealership relationship, Wisconsin's law is often regarded as unique. As a result, it can trip up grantors who may find themselves unexpectedly subject to the WFDL and unable to simply proceed as their contract dictates. *See, e.g.*, Charles Modell & Joseph Fittante, Jr. *Avoiding the Accidental Franchise*, Wis. Law., May 2003, available at https://www.wisbar.org/NewsPublications/WisconsinLawyer/Pages/Article.aspx?Volume=76&Issue=5&ArticleID=414. With respect to whether there is good cause to terminate or alter a dealership agreement, the question of when the grantor's changed circumstances may constitute good cause is one particular question that has garnered much debate. *See, e.g.*, *Ziegler Co. v. Rexnord, Inc.*, 147 Wis. 2d 308, 314, 433 N.W.2d 8, 11 (1988) ("the grantor's economic circumstances may constitute good cause to alter its method of doing business with its dealers, but such changes must be essential, reasonable and nondiscriminatory"); *Kealey Pharmacy & Home Care Servs. v. Walgreen Co.*, 761 F.2d 345, 350 (7th Cir. 1985) (holding that a grantor's general desire to eliminate dealers and shift to direct sales was not good cause).

Aside from whether a change or termination was for good cause, disputes often involve whether a dealership agreement existed in the first place. "Whether a relationship constitutes a 'dealership' under the WFDL is a recurring question for courts, in part because the definition of 'dealership' in the WFDL is 'both extremely broad and highly nuanced.'" *Benson v. City of Madison*, 2017 WI 65, ¶34, 376 Wis. 2d 35, 897 N.W.2d 16 (quoting *Baldewein Co. v. Tri-Clover, Inc.*, 2000 WI 20, ¶12, 233 Wis. 2d 57, 606 N.W.2d 145; citing *Bush v. Nat'l School Studios, Inc.*, 139 Wis. 2d 635, 646, 407 N.W.2d 883)). "[T]here is rarely an obvious answer to the question of whether a business is a dealership …." *Bush*, 139 Wis. 2d at 647, 407 N.W.2d at 888.

Specifically, much litigation focuses on the "troublesome" community of interest element, which requires an examination of "a wide variety of facets" both individually and collectively. *See Ziegler Co. v. Rexnord, Inc.*, 139 Wis. 2d 593, 600, 605-06, 407 N.W.2d 873, 877, 879 (1987); *see also Kaeser Compressors, Inc. v. Compressor & Pump Repair Servs.*, 832 F. Supp. 2d 984, 990 (E.D. Wis. 2011) (discussing *Ziegler*). The Wisconsin Supreme Court has identified the existence of a "continuing financial interest" and the "the degree to which the dealer and grantor cooperate, coordinate their activities and share common goals in their business relationship" as two "guideposts" to aid courts in determining if there is a community of interest. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1093 (7th Cir. 2008) (quoting *Ziegler*, 139 Wis. 2d at 604-05, 407 N.W.2d at 879). A community of interest will often be found if either "a large proportion of an alleged dealer's revenues are derived from the dealership" or "when

6

the alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination." *Frieburg Farm Equip., Inc. v. Van Dale, Inc.*, 978 F.2d 395, 399 (7th Cir. 1992).

A dealer must bring any claim under the WFDL within one year of the claim accruing. Wis. Stat. § 893.93(3)(b). A wrongful termination claim under the WFDL ordinarily accrues when the dealer receives notice of the termination. *Les Moise, Inc. v. Rossignol Ski Co.*, 122 Wis. 2d 51, 53, 361 N.W.2d 653, 654 (1985). However, if that termination notice is contingent on some future event occurring, the wrongful termination claim accrues with the occurrence of that later event. *See Chili Implement Co. v. CNH Am., LLC*, 2015 WI App 43, 362 Wis. 2d 540, 865 N.W.2d 885 (unpublished, per curiam).

### 3. Motion to Dismiss

The parties' Term Sheet, in a provision titled "Governing Law," contains both a choice of law provision and a forum selection clause. It states that Belgian law will apply and that the commercial court of Leuven, Belgium is the "exclusive jurisdiction." (ECF No. 3-1 at 5.)

There is no dispute that this court has both subject matter and personal jurisdiction regarding the present action and that venue is otherwise proper in this district. *Cf.* 28 U.S.C. §§ 1332(a), 1391(b)(2); Wis. Stat. § 801.05(3). Rather, because the defendants argue that a foreign country is the proper forum for this dispute, their motion seeks dismissal under the doctrine of *forum non conveniens. See Atl. Marine*

*Constr. Co. v. United States Dist. Court,* 571 U.S. 49, 60-61, 66, fn. 8 (2013). Nonetheless, the court analyzes a motion to dismiss on *forum non conveniens* grounds using the same framework that applies to a motion to transfer under 28 U.S.C. § 1404(a). *Id.* at 61.

Forum selection clauses are presumptively valid under both federal and Wisconsin law. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 776 (7th Cir. 2014); *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶22, 296 Wis. 2d 273, 722 N.W.2d 633. And there is no dispute that the present clause is valid as a matter of contract law. *See Watch & Accessory Co. v. Garmin Int'l, Inc.*, No. 21-C-382, 2021 U.S. Dist. LEXIS 247893, at *7 (E.D. Wis. Dec. 30, 2021) (citing *Atlantic Marine*, 571 U.S. at 62 n.5).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should" a court deny a motion to dismiss pursuant to a valid forum selection clause. *Atl. Marine*, 571 U.S. at 62 (footnote omitted); *see also id.* at 63 ("a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases" (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Thus, when a dispute is subject to a contractual forum selection clause, "the plaintiff's choice of forum merits no weight." *Atl. Marine*, 571 U.S. at 63. The parties' private interests, such as the inconvenience of the chosen forum are likewise

irrelevant to a court's analysis of whether to enforce an agreed forum selection clause. *Id.* at 64.

However, in an unusual case, public-interest factors may lead a court to decline to enforce a forum selection agreement. *Atl. Marine*, 571 U.S. at 64. Kinetec argues that this is one such case in light of the strong public policy underlying the WFDL.

### 3.1.    Choice of Law

The WFDL reflects a strong public policy to protect dealers. *Brown Dog, Inc. v. Quizno's Franchise Co., LLC*, No. 04-C-0018-C, 2004 U.S. Dist. LEXIS 8880, at *6 (W.D. Wis. May 13, 2004). In much the same way that public policy renders unenforceable any attempt by parties to agree to, for example, a state legislature determines is a usurious interest rate, so too does public policy render void any attempt by parties to vary or evade the application of the WFDL. Wis. Stat. § 135.025(3); *Bush*, 139 Wis. 2d at 643, 407 N.W.2d at 887. Any provision attempting to avoid the WFDL is void but only to the extent that it is inconsistent with the WFDL. Wis. Stat. § 135.025(3). Thus, the choice of law provision in the parties' agreement is void to the extent that, by stating Belgian law alone will govern their relationship, it purports to exclude application of the WFDL.[1] Wis. Stat. § 135.025(3); *Bush*, 139 Wis. 2d at 637, 407 N.W.2d at 884. Therefore, notwithstanding the parties' agreement that only Belgian law will apply to their agreement, Kinetec may bring a WFDL claim.

---

[1] The parties, however, agreed at oral argument that Belgian law applies to Kinetec's common law claims.

The partial invalidity of the choice of law provision, however, does not invalidate the forum selection clause. *Watch & Accessory Co.*, 2021 U.S. Dist. LEXIS 247893, at \*9 (citing *Stawski Distrib. Co. v. Browary Zywiec SA*, 349 F.3d 1023 (7th Cir. 2003)); *Brava Salon Specialists, LLC v. Label.M USA, Inc.*, No. 15-cv-631-bbc, 2016 U.S. Dist. LEXIS 18849, at \*5 (W.D. Wis. Feb. 16, 2016) (citing *Rolfe v. Network Funding LP*, No. 14-cv-9-bbc, 2014 U.S. Dist. LEXIS 67476, 2014 WL 2006756, at \*2-3 (W.D. Wis. May 16, 2014)); *see also* Wis. Stat. § 135.025(3) (stating that a provision in a contract that violates the WFDL "is void and unenforceable to that extent only").

### 3.2.    Forum Selection Clause

The WFDL does not explicitly address forum selection clauses. The closest it comes is perhaps in Wis. Stat. § 135.06 when it created a private right of action, stating:

> If any grantor violates this chapter, a dealer may bring an action against such grantor in any court of competent jurisdiction for damages sustained by the dealer as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable actual attorney fees, and the dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances.

A couple courts have read the clause authorizing "a dealer [to] bring an action against such grantor in any court of competent jurisdiction" as codifying a "dealer's choice" in terms of venue. *See Brio Corp. v. Meccano S.N.*, No. 06-C-1001, 2007 U.S. Dist. LEXIS 65713, at \*4-5 (E.D. Wis. Sep. 5, 2007); *Brown Dog,* 2004 U.S. Dist. LEXIS 8880, at \*6-7.

The court, however, finds that reading of Wis. Stat. § 135.06 to be untenable. *See, e.g.*, *ACD Distribution, LLC v. Wizards of the Coast, LLC*, No. 18-cv-658-jdp, 2018 U.S. Dist. LEXIS 175828, at *5 (W.D. Wis. Oct. 12, 2018); *Wins Equip., LLC v. Rayco Mfg., Inc.*, 668 F. Supp. 2d 1148, 1152 n.1 (W.D. Wis. 2009) (finding that it would be inconsistent with *Stewart Org.,* 487 U.S. 22, to hold that the WFDL bars enforcement of a forum selection clause). Rather than guaranteeing a dealer's choice of forum, the provision reflects merely the creation of a dealer's private right of action and that such an action may be brought in any court that is able to hear the claim. Indeed, by authorizing suit in "any court of competent jurisdiction" the Wisconsin Legislature recognized that many courts, not just Wisconsin courts, may be appropriate forums for WFDL claims.

Although Wisconsin has a strong public policy in favor of protecting the rights of dealers generally, the court has not been presented with any articulable, much less compelling, state public policy related specifically to a dealer's ability to essentially forum shop. And courts routinely enforce forum selection clauses in WFDL cases. *See, e.g.*, *Watch & Accessory Co.*, 2021 U.S. Dist. LEXIS 247893, at *9 (citing cases). In fact, the court has not identified any instance following the Supreme Court's decision in *Atlantic Marine*—where the Court held that a forum selection clause superseded much of the general *forum non conveniens* analysis—where a court has not enforced a valid forum selection clause in an WFDL case.

Whether a forum selection clause is enforceable in a WFDL action comes down to whether the contracted forum will protect and enforce the dealer's rights under the

WFDL. If it will not, then in light of Wisconsin strong public policy protecting Wisconsin dealers and the bar on any provision that acts to waive, forfeit, or limit a dealer's rights under the WFDL, then this is one of the uncommon instances where a federal court must not transfer or dismiss in favor of the contract forum. However, if the dealer is able to litigate its WFDL in the contract forum, then the court must honor the parties' choice of forum. Thus, the question for the court is whether Kinetec can pursue its WFDL claim in the commercial court in Leuven, Belgium.

At oral argument, both sides conceded that they could not speak with any confidence as to what the Belgian commercial court would do with a WFDL claim. From what the court is able to glean, Belgian courts will apply foreign law when it governs a claim. Specifically, Article 15 of the Belgian Code of Private International Law appears to clearly permit claims arising under foreign law. *See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 300 (S.D.N.Y. 2018). MedEnvision proffered that Belgium has its own version of a dealership law, and thus while its details undoubtedly vary (Wisconsin law being essentially unique, *see, e.g.,* Kerry L. Bundy & Joshua N. Turner, *The Wisconsin Fair Dealership Law: Understanding the Interplay Between Forum-Selection and Choice-of-Law Clauses*, 42 Franchise L.J. 123, 123 (2022)), the principle of dealers having enforceable rights against a grantor will be familiar to a Belgian commercial court. Moreover, the strictures of the WFDL are accessible to Belgian lawyers, such that it seems that Wisconsin law is more accessible to legal professionals in Belgium than Belgian law is accessible this court.

After all, it was Kinetec's Belgian lawyers that first raised the application of the WFDL in the pre-litigation discussions among the parties. (ECF No. 17-1 at 4-5.)

Raising a WFDL claim in a jurisdiction unfamiliar with the law poses uncertainties. For example, in *ACD Distribution,* 2018 U.S. Dist. LEXIS 175828, the Wisconsin dealer filed its action in Dane County Circuit Court, but the defendants removed the action to federal court in the Western District of Wisconsin. *Id.* at *1. In accordance with the parties' forum selection clause, that court transferred the case to the Western District of Washington. *Id.* at *9. The court in Washington applied Washington choice of law rules to dismiss the plaintiff's WFDL claim. *ACD Distribution, LLC v. Wizards of the Coast, LLC*, No. C18-1517JLR, 2020 U.S. Dist. LEXIS 106231, at *15 (W.D. Wash. June 17, 2020). The Ninth Circuit Court of Appeals affirmed that conclusion. *ACD Distribution LLC v. Wizards of the Coast LLC*, Nos. 20-35828, 20-35986, 2021 U.S. App. LEXIS 26691 (9th Cir. Sep. 3, 2021). In that instance, transferring the case to the contract forum appears to have directly resulted in the plaintiff being unable to pursue its WFDL claim as the result of an analysis that some may argue was inconsistent with the WFDL.

These uncertainties are compounded when the contract forum is in a foreign country. Kinetec noted at oral argument that it had not identified any instance where a court enforced a forum selection clause to transfer a WFDL claim to a foreign country. The court has identified only one case where the issue was even presented. *See Brio Corp.*, 2007 U.S. Dist. LEXIS 65713. In *Brio Corp.*, the court denied a motion to dismiss in favor of litigation in France in part because of what this court finds to

be a mistaken reading of Wis. Stat. § 135.06 (discussed above) and a *forum non conveniens* analysis that was overruled by *Atlantic Marine Construction, see* 571 U.S. 49. Thus, Kinetec also correctly conceded that there was nothing in the WFDL that prohibits a dealer from bringing a WFDL claim in a foreign country or that categorically prohibits a court from dismissing an action on *forum non conveniens* grounds when a forum selection clause mandates litigation in a foreign court.

This court is presumably more familiar with the WFDL than a Belgian court. But that does not present a compelling public policy reason for ignoring a valid forum selection clause. *Brava Salon*, 2016 U.S. Dist. LEXIS 18849, at *5 (citing *Atl. Marine*, 571 U.S. at 67-68). Courts routinely address claims arising under unfamiliar laws.

Litigating in Belgium may pose certain difficulties for the parties. It is the court's understanding that Belgian courts regard matters of foreign law as facts that proponents must prove, thereby potentially requiring expert witnesses to prove what Wisconsin law is. There are also practical hurdles that arise when witnesses and records are in Wisconsin. Of course, there are converse concerns if this action were to remain in this court with this court forced to apply Belgian law to the common law claims, *cf.* Fed. R. Civ. P. 44.1 (determining foreign law), and Belgian witnesses potentially having to come here for any trial. But all of these factors are irrelevant to the court's *forum non conveniens* analysis because they are purely private matters of convenience for the parties. *See Watch & Accessory Co.*, 2021 U.S. Dist. LEXIS 247893, at *8-9. The parties having agreed to a forum selection clause, the court is concerned only with public-interest factors. *Atl. Marine*, 571 U.S. at 64. And the

public interest in this case is primarily Wisconsin's strong interest in protecting dealers.

Based on the record before the court, it is likely that Kinetec could litigate its WFDL claims in the commercial court in Leuven, Belgium.

When the parties' dispute is subject to a valid forum selection clause, it is the party seeking to avoid that clause that must prove that the transfer to the agreed forum is unwarranted. *Atl. Marine*, 571 U.S. at 63; *Neff Grp. Distrib., Inc. v. Cognex Corp.*, No. 22-cv-186-wmc, 2022 U.S. Dist. LEXIS 139458, at *12 (W.D. Wis. Aug. 5, 2022). Here the burden falls on Kinetec and it has not shown that dismissing this action in favor of an action in Belgium would result in it forfeiting its WFDL. Rather, MedEnvision has demonstrated that Kinetec likely can pursue its WFDL claim in Belgium. While this court cannot confidently predict what any other court will do, certainty is not required. When the dealer can likely bring its WFDL claim in the contract forum, enforcing the parties' agreement to litigate in a particular forum is consistent with Wisconsin's strong public interest in protecting the rights of dealers because the forum selection clause cannot be regarded as an intentional attempt to evade the law's protections. Because Kinetec has not shown that enforcing the forum selection clause would be inconsistent with a compelling public policy (*e.g.*, the enforcement of a dealer's rights under the WFDL), the court must enforce the parties' agreement and dismiss this action without prejudice in favor of the Belgian forum.

### 4. Conclusion

Kinetec and MedEnvision, companies closely connected to Belgium, agreed to litigate any disputes regarding their United States distribution agreement in Belgium. Although Wisconsin's strong public policy prohibits any attempt to contract around the application of the WFDL, it does not prohibit forum selection clauses generally, or agreements to litigate in a foreign court specifically. Whether a forum selection clause is enforceable vis-à-vis a WFDL claim depends on whether the dealer will be able to enforce its WFDL rights in the contract forum. Under federal law, the party opposing transfer to the contract forum has the burden to prove that enforcing the parties' agreement would violate a compelling public policy. Kinetec has failed to so prove, and accordingly, the court must honor the parties' agreement to resolve any dispute in Belgium. Therefore, the court will grant MedEnvision's motion to dismiss on the basis of *forum non conveniens* and deny Kinetec's motion for a preliminary injunction.

Having concluded that this action is not properly before this court, the court must also vacate its temporary restraining order.

**IT IS THEREFORE ORDERED** that the Temporary Restraining Order issued by this court on April 30, 2026 (ECF No. 26) is **vacated**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for a preliminary injunction (ECF No. 2) is **dismissed as moot**.

16

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss (ECF No. 15) is **granted** on the basis of *forum non conveniens,* and this action is **dismissed without prejudice**. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 11th day of May, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge
