**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**KINETEC USA, INC.,**

                **Plaintiff,**

        **v.**                                   **Case No. 26-CV-442**

**MEDENVISION BV, et al.,**

                **Defendant.**

---

**DECISION AND ORDER**

---

### 1. Background

In April 2024, MedEnvision BV informed its distributor, Kinetec USA, Inc., that it intended to terminate their distribution agreement. *Kinetec USA, Inc. v. MedEnvision BV*, No. 26-CV-442, 2026 U.S. Dist. LEXIS 103318, at *1 (E.D. Wis. May 11, 2026). Their agreement required two-year's notice for any termination and therefore MedEnvision told Kinetec that the relationship would end April 30, 2026.

Kinetec filed suit against MedEnvision in March 2026. With MedEnvision's answer not due until well after the scheduled expiration of the agreement, Kinetec on April 24, 2024, sought an ex parte temporary restraining order. (ECF No. 11.) The court granted that motion on April 30, 2026 (ECF No. 26); *Kinetec United States v. Medenvision Bv*, No. 26-CV-442, 2026 LX 241383 (E.D. Wis. Apr. 30, 2026), and

scheduled a hearing on Kinetec's motion for a preliminary injunction and MedEnvision's motion to dismiss.

Following that hearing, the court issued a decision vacating its temporary restraining order and granting MedEnvision's motion to dismiss. (ECF No. 34); *Kinetec USA, Inc. v. MedEnvision BV*, No. 26-CV-442, 2026 LX 244544 (E.D. Wis. May 11, 2026).

Kinetec is a Wisconsin corporation but a wholly owned subsidiary of a Belgian company. MedEnvision is a Belgian company. The parties negotiated their agreement in Belgium and agreed that Belgian law would apply to disputes arising under the agreement and that all disputes would be resolved in a Belgian court. The wrinkle is that, in light of Wisconsin's strong public policy interests, the protections afforded a dealer under Wisconsin's Fair Dealership Law (WFDL) cannot be waived by contract. Thus, a choice of law provision that purports to exempt the parties' agreement from the WFDL is unenforceable (but only to the extent that it stands to waive the WFDL claim). *Kinetec*, 2026 U.S. Dist. LEXIS 103318, at *10.

As to the forum selection clause, following the Supreme Court's decision in *Atlantic Marine Construction Company v. United States District Court*, *see* 571 U.S. 49 (2013), courts must enforce a forum selection clause unless the party opposing the clause proves that doing so would be contrary to the public interest. *Kinetec*, 2026 U.S. Dist. LEXIS 103318, at *16-17. The WFDL reflects Wisconsin's strong and unwaivable public policy protecting dealers. *Id.* at *12-13. Thus, any agreement, including a choice of law or forum selection clause, that has the effect of waiving a

dealer's rights under the WFDL is unenforceable. *Id.* at \*10; *see also Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (noting that a forum selection clause is unreasonable and unenforceable "if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision").

Kinetec has the burden to prove that the Belgian court would not enforce the WFDL. *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020) (quoting *Atl. Marine*, 571 U.S. at 63. The quantum of that burden has not been clearly articulated, although the Court's language in *Atlantic Marine* strongly suggests it is something greater than the ordinary preponderance of the evidence standard. The Supreme Court said that the opponent "must bear the burden of showing that public-interest factors *overwhelmingly* disfavor a transfer," *Atl. Marine*, 571 U.S. at 66 (emphasis added), and that a "forum-selection clause be 'given controlling weight in all but the *most exceptional cases*,'" *id.* at 60 (emphasis added) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)); *see also Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023) (stating that the party resisting the forum selection clause bears a "heavy burden"); *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186-87 (3d Cir. 2017) (same); *Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 292 (1st Cir. 2015) (same).

The court granted MedEnvision's motion to dismiss because Kinetec failed to sustain its burden to show that public policy factors rendered Belgium an inappropriate forum. *See Kinetec*, 2026 U.S. Dist. LEXIS 103318, at \*16-17

3

(discussing, in part, *Atl. Marine*, 571 U.S. at 63). The court concluded, "Based on the record before the court, it is likely that Kinetec could litigate its WFDL claims in the commercial court in Leuven, Belgium." *Id.* at \*16.

As is made clear by the introductory phrase, this conclusion of the "likely" outcome in the Belgian court was "[b]ased on the record before the court." *Kinetec* 2026 U.S. Dist. LEXIS 103318, at \*16. In characterizing the Belgian court's actions as "likely," the court was not purporting to predict the actual action of that court but rather stating its conclusion in the language of the preponderance of the evidence burden of proof that Kinetec failed to meet. For many reasons, it is certainly possible that the Belgian court will ultimately find Kinetec's WFDL claim barred. In other words, this court's conclusion is neither a gut prediction nor a finding based on a comprehensive and authoritative assessment of Belgian law. Rather, it is a conclusion based on the record presented to this court and assessed in light of the parties' respective burdens. The court could have just as easily (although somewhat more awkwardly) phrased its conclusion as, "Kinetec has failed to show that it is likely that it could not litigate its WFDL claims in the commercial court in Leuven, Belgium." This is the key, the burden is Kinetec's and it has failed to meet that burden.

## 2. Motion for Reconsideration

Kinetec is now back before the court asking the court to reconsider its decision and, in the meantime, to issue an injunction to further extend the dealership agreement. Kinetec argues that reconsideration is appropriate because Kinetec's "response schedule was extraordinarily compressed" and therefore it was unable to

present details as to how the Belgian court would consider the WFDL claim. (ECF No. 41; *see also* ECF No. 50 at 4.) Details were lacking at the hearing; in fact, neither party specified who had the burden of proving whether a Belgian court would apply the WFDL.

Of course, the reason the response schedule was extraordinarily compressed was because of Kinetec's own decision to wait until just days before the agreement expired to bring the issue to the court, despite having over two years notice. Its delay forced not only it, but defense counsel and the court to set aside other obligations and tackle a difficult and novel issue on an expedited basis. A dilatory party is not entitled to, and certainly cannot expect, extraordinary relief in the form of an injunction to accommodate its delay. Having chosen that compressed timeframe, it cannot now seek a do-over, where it now presents the evidence and argument it could have (and therefore should have) presented initially. "Newly presented, but not new, evidence is not a proper ground for altering the judgment." *Turner-Harris v. Dehaan*, No. 20-cv-1815-pp, 2023 U.S. Dist. LEXIS 14958, at *4 (E.D. Wis. Jan. 30, 2023) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

In its present motion, Kinetec does not purport to confidently predict what the Belgian court will do regarding the WFDL claim. Rather, it merely underscores "the risk" and "uncertainty" that the Belgian court will not recognize the WFDL claim. That conjecture does not satisfy the burden which rests with Kinetec. (ECF No. 41 at 5, 8, 9.) Kinetec states that a Belgian court will apply private international law and, with respect to a contract dispute, this often results in the court applying the law

agreed to by the parties. (ECF No. 41 at 7-8.) "Belgian authority confirms that Belgian courts do not automatically apply a foreign mandatory rule simply because a party invokes it; instead, the court evaluates that issue through Belgian private-international-law principles." (ECF No. 41 at 8.) It states that Belgian courts are not required "to apply the mandatory or public policy provisions of the law of another State" but merely have the discretion to do so. (ECF No. 41 at 10.) If the Belgian court cannot determine the foreign law, then Belgian law applies. (ECF No. 41 at 10.) Kinetec also states that Belgian courts do not recognize *stare decisis* and suggests that a Belgian court may simply ignore what Wisconsin courts have said about the WFDL. (ECF No. 41 at 11.) The fact that proceedings in the commercial court in Leuven are conducted in Dutch compounds problems because it will require translation of business records, witness testimony, statutes, and case law. (ECF No. 41 at 12.) It also argues that Belgian law does not afford the same sort of preliminary injunctive relief available in this court. (ECF No. 41 at 12-13.) Kinetec additionally argues that Belgium's own dealership law would not apply to the parties' dispute because it applies only to damages occurring in Belgium. (ECF No. 41 at 10-11.)

Uncertainty as to what will occur in the transferee forum weighs against Kinetec as the party with the burden to prove that Belgium court is an inappropriate forum. Kinetec does not describe the circumstances relevant to a Belgian court's discretion in applying public policy provisions of another state's law. Thus, its observation that applying public policy is discretionary does not benefit its claim for relief. Kinetec offers no reason to believe that the Belgian court would not be able to

determine Wisconsin law. While determining Wisconsin law will require an expert, that and the related translation problem is merely the inverse of the problem this court would face if the case proceeded here. *See, e.g.*, Fed. R. Civ. P. 44.1. Kinetec agrees that its common law claims are subject to the choice of law provision and thus arise under Belgian law. *Kinetec*, 2026 U.S. Dist. LEXIS 103318, at \*10 fn. 1. Moreover, the fact that the parties' agreement is in English underscores the fact that English is much more familiar to the Belgian legal profession than Dutch is to the average attorney (or judge) in the United States. Thus, the risk of error arising from mistranslation is likely less if this action proceeds in Belgium. The fact that Belgium's dealership law will not apply is immaterial to the question of whether Belgium is a proper forum. But as the court noted previously, the fact that Belgium has a similar dealership law suggests that its courts will have some familiarity with the principles underlying Wisconsin's law. *Id.* at \*13.

Thus, Kinetec has failed to sustain its burden to show that the Belgian court is an inappropriate forum such that this is one of the "most exceptional cases," *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org.*, 487 U.S. at 33 (Kennedy, J., concurring), where, in light of the public interest factors, the court may decline to enforce the parties' forum selection clause.

Again, this court's conclusion was not a confident prediction as to what will occur in Belgium, but rather a finding that Kinetec failed to sustain its burden to show "that public-interest factors *overwhelmingly* disfavor a transfer," *Atl. Marine*, 571 U.S. at 66 (emphasis added). Even if the court were to consider the additional

facts and arguments that Kinetec improperly presents for the first time in its present motion, it would not alter the court's conclusion. Kinetec has shown only that there is uncertainty as to what the Belgian court will do. Indeed, as the opening line of its reply (ECF No. 50 at 1) underscores, its argument is essentially that the court must decline to enforce the forum selection clause in light of this uncertainty.

However, following *Atlantic Marine*, uncertainty is not enough. To defeat a foreign selection clause a party must do more than show that it is possible that the foreign forum will not apply a law like the WFDL. Granted, predicting what another court will do is often difficult. The Supreme Court, however, requires a party like Kinetec to do so to defeat a forum selection clause. In a case such as this, where the relevant public interest factor is whether the foreign court will apply a state law such as the WFDL, the opponent to the forum selection clause must show by, at a minimum, a preponderance of the evidence (*i.e.*, that it is more likely than not), that the foreign court will not apply the state law. Kinetec has failed to do so. Accordingly, the court will deny Kinetec's motion for reconsideration.

### 3. Injunctive Relief

Kinetec's "Motion for Temporary Administrative Status Quo Relief Pending Reconsideration" (ECF No. 39) presents the question of whether the court should reinstate its injunction barring the MedEnvision's termination of the dealership

agreement so that Kinetec may have time to seek relief in the court of appeals. Thus, it is not mooted by the court's denial of Kinetec's motion for reconsideration.

However, the standard for granting injunctive relief pending appeal mirrors that applicable to a motion for a preliminary injunction. *See Illinois v. Trump*, 155 F.4th 929, 936 (7th Cir. 2025). The court's discussion above is relevant to the likelihood of success on the merits factor. *See ExeGi Pharma, LLC v. Brookfield Pharms., LLC*, No. 20-CV-192-JPS, 2023 WL 4352452, at *7 (E.D. Wis. July 5, 2023). In addition to a likelihood of success on the merits, the movant must show "a threat of irreparable harm absent a stay." *Trump*, 155 F.4th at 936. If the movant satisfies this initial burden, the court must consider "the balance of harms, primarily in terms of the balance of risks of irreparable harm in case of a judicial error" and "the public interest." *Id*.

Although the court granted Kinetec's motion for a temporary restraining order, in doing so it noted that there were strong reasons to question whether its action was timely.

> The WFDL has a one-year statute of limitations. Wis. Stat. § 893.93(3)(b). A claim for wrongful termination of a dealership agreement accrues upon the receipt of a notice that does not comply with the WFDL. *Les Moise, Inc. v. Rossignol Ski Co.*, 122 Wis. 2d 51, 58, 361 N.W.2d 653, 656 (1985). Kinetec acknowledges that it received notice of its termination on April 25, 2024. (ECF No. 1, ¶ 41.)

*Kinetec United States v. Medenvision Bv*, No. 26-CV-442, 2026 U.S. Dist. LEXIS 95139, at *3-4 (E.D. Wis. Apr. 30, 2026).

Through oral argument and subsequent briefing, the parties added to the record regarding the timeliness of Kinetec's wrongful termination claim. Indeed, the

statute of limitations question was fully briefed as part of MedEnvision's motion to dismiss. (ECF Nos. 16, 31.) However, because the court concluded that Kinetec's action belonged in Belgium, the statute of limitations question became moot. Although the court's conclusion on the forum question precludes the court from conclusively deciding the timeliness of Kinetec's wrongful termination claim, timeliness is relevant to its request for injunctive relief, and thus the court takes it up in that context. If Kinetec's wrongful termination claim is untimely, it cannot succeed on the merits.

> A dealer must bring any claim under the WFDL within one year of the claim accruing. Wis. Stat. § 893.93(3)(b). A wrongful termination claim under the WFDL ordinarily accrues when the dealer receives notice of the termination. *Les Moise, Inc. v. Rossignol Ski Co.*, 122 Wis. 2d 51, 53, 361 N.W.2d 653, 654 (1985). However, if that termination notice is contingent on some future event occurring, the wrongful termination claim accrues with the occurrence of that later event. *See Chili Implement Co. v. CNH Am., LLC*, 2015 WI App 43, 362 Wis. 2d 540, 865 N.W.2d 885 (unpublished, per curiam).

*Kinetec*, 2026 U.S. Dist. LEXIS 103318, at *8.

Kinetec does not appear to dispute that it had a wrongful termination claim back in April 2024 when MedEnvision said it would be terminating their dealership agreement in two years. *See Les Moise*, 122 Wis. 2d at 53, 361 N.W.2d at 654. Rather, it argues that MedEnvision's decision in September 2025 when "it disavowed Kinetec's Active Customer protections by stating that Kinetec could no longer sell MedEnvision products after April 30, 2026, demanded Active Customer data, announced that MedEnvision would begin contacting Active Customers directly, and refused to buy back remaining inventory" are "independently actionable point[s]."

(ECF No. 31 at 9.) Thus, it asserts, "Accordingly, even if *Les Moise* creates a limitations issue for a notice-based termination theory tied solely to the April 25, 2024, notice, it does not bar Kinetec's later substantial-change claims." (ECF No. 31 at 9.)

Kinetec is correct that actions MedEnvision took within one year of Kinetec filing this action that independently violated the WFDL, *see, e.g.*, Wis. Stat. § 135.045 (requiring a grantor, following termination, to repurchase dealer inventory), are not time barred. *See Chili Implement*, 2015 WI App 43, ¶ 20 ("In sum, we disagree with CNH that *Les Moise* establishes that all causes of action under the Wisconsin Fair Dealership Law accrue when a dealer receives a termination notice.").

However, the court in *Chili Implement* did not hold that a grantor's subsequent violation of the WFDL renders timely an otherwise untimely wrongful termination claim. Rather, the court held only that a wrongful termination claim that is dependent on subsequent events (which may be separate violations of the WFDL), does not accrue until those subsequent events occur. *Chili Implement*, 2015 WI App 43, ¶ 21.

MedEnvision's alleged WFDL violations that occurred within one year of Kinetec's complaint are independent of Kinetec's wrongful termination claim. They had no relationship to the accrual of Kinetec's wrongful termination claim and cannot serve to render that claim timely.

Thus, while certain of Kinetec's WFDL claims are timely, the timely claims are unrelated to Kinetec's request for injunctive relief. It is Kinetec's wrongful

termination claim that gives rise to its claim for injunctive relief and specifically the continuation of the allegedly wrongfully terminated dealership agreement. Because the wrongful termination claim is untimely, there is no basis for injunctive relief extending the dealership agreement

Nonetheless, mindful that likelihood of success on the merits is a comparatively low standard, even if the court were to find that Kinetec satisfied this and the irreparable harm elements, the balance of factors would require the court to deny Kinetec's motion.

Kinetec argues that allowing MedEnvision to terminate the dealership agreement would result in immediate and irreparable harm and that MedEnvision would not be prejudiced by maintaining the status quo. Kinetec states that MedEnvision products account for 75 percent of its revenue, and that revenue supports five employees and about 20 contractors. (ECF No. 39 at 2.) It states that it does not currently have a competitor product line to substitute for MedEnvision, and it will take time to build up demand for any new product line. (ECF No. 39 at 3.)

In light of the alleged harms that Kinetec claims it will face in the absence of an injunction, it is inexplicable that Kinetec waited nearly two years before bringing this action. The nature and extent of certain of those harms—*e.g.*, the time it will take to build up a new product line—are directly attributable to Kinetec's delay. Its assertion that the parties spent much of that time attempting to negotiate a resolution that would allow Kinetec to maintain some sort of relationship with MedEnvision is unpersuasive. Even by Kinetec's telling, any proposal would have

resulted in a significant change in the parties' relationship that would present the same sort of wrongful termination WFDL claim that Kinetec seeks to bring now. And in any event, Kinetec alleges that all hope for any continued relationship disappeared in September 2025. (ECF No. 1, ¶ 46.) Yet, Kinetec waited six months to bring this action. The court cannot square Kinetec's delay with its present claims of immediate harm and thus must conclude that its claims are exaggerated. *Cf. Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 123 F. Supp. 2d 470, 478-80 (E.D. Wis. 2000).

Kinetec's delay also results in the public interest tipping against injunctive relief. The public interest favors parties diligently asserting their rights. The two years that Kinetec was afforded was time enough to fully litigate its claims without requiring resort to the extraordinary measure of injunctive relief. Allowing Kinetec to capitalize on its idleness to extend its terminated dealership agreement by way of injunctive relief would encourage other litigants to pursue similar dilatory strategies, undermining effective and efficient business relationships and requiring needlessly expedited litigation, thereby burdening the courts and the parties. The court finds unpersuasive any notion that any customer will be affected absent injunctive relief. The record suggests that MedEnvision stands ready and able to immediately step in and serve Kinetec's former customers. Indeed, MedEnvision's readiness to do so is one reason Kinetec has advanced this claim as necessitating injunctive relief.

Injunctive relief would also prejudice MedEnvision. (*See* ECF No. 46 at 3.) MedEnvision has been planning for this transition for two years and has notified customers and distributors of the change. (ECF No. 46 at 2.) Reinstating the

distribution agreement stands to frustrate and confuse consumers of MedEnvision products, potentially leading to loss of goodwill and other harms. (*See* ECF No. 46 at 3.)

Weighing these factors in light of the court's conclusion that Kinetec's relevant claim fails for two independent reasons—forum non conveniens and statute of limitations—the court must deny its motion for injunctive relief pending appeal.

**IT IS THEREFORE ORDERED** that Kinetec's motion to restrict documents (ECF No. 37) is **granted**.

**IT IS FURTHER ORDERED** that Kinetec's motion for injunctive relief (ECF Nos. 38, 39) is **denied**.

**IT IS FURTHER ORDERED** that Kinetec's motion for reconsideration (ECF Nos. 40, 41) is **denied**.

Dated at Green Bay, Wisconsin this 26th day of June, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge